FILED
2026 Jul-30  AM 11:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| JAMIE LINDSAY VANN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **7:24-cv-1353-EGL** |
| | ) | |
| NEW PENN FINANCIAL LLC | ) | |
| et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Jamie Vann sues New Penn Financial LLC and the Federal Home Loan Mortgage Corporation based on the foreclosure of her home. *See* Doc. 12. Defendants move for summary judgment. Doc. 24-1. Their motion is **GRANTED**.

## BACKGROUND

In 2012, Vann obtained a loan from J.P. Morgan Chase Bank, N.A. to refinance a mortgage on her home, and in 2018 that loan was assigned to Shellpoint, which Vann identifies as New Penn Financial LLC. Doc. 24-1 at 4; *id.* at 1 n.1. In March 2020, Shellpoint sent Vann a notice of default. *Id.* at 5. Around a year later, however, Vann entered into a forbearance plan to suspend loan payments for three months because of a COVID-19 hardship. *Id.* She continued to enter forbearance plans in three-month intervals for the following six months. *Id.* at 6. In 2022, she applied unsuccessfully for loan modifications, and in April 2022, following those

unsuccessful attempts, Vann once again entered a three-month forbearance plan, followed by more unsuccessful applications to modify her loan. *Id.* at 7, 9.

In May 2024, Shellpoint sent her a notice of default followed by a notice of acceleration and sale in July 2024. *Id.* at 9. Shellpoint explained that it would sell the property on August 29, 2024. *Id.* Shellpoint says that although the sale was supposed to happen between 11:00 am and 4:00 pm on that date, Vann waited until 10:40 am on the day of the sale to file this lawsuit contesting foreclosure. *Id.*; *see also* Doc. 28 at 12 (Vann describing her action as being filed "mere minutes before the scheduled foreclosure auction"). Shellpoint sold the property on that date to the Federal Home Loan Mortgage Corporation and recorded the sale a few days later. Doc. 28 at 12; Doc. 24-1 at 9.

Vann later amended her complaint. *See* Doc. 12. She sues Shellpoint and the Federal Home Loan Mortgage Corporation, asserting claims for declaratory relief, slander of title, violations of the Fair Debt Collection Practices Act, breach of contract, and unjust enrichment. *Id.* The essence of her complaint is that Shellpoint violated the mortgage by (1) not complying with federal law and (2) not stopping the foreclosure sale after she filed this lawsuit. The defendants moved for summary judgment. Doc. 24-1. Vann conceded that her unjust enrichment claim fails but continues to press her remaining claims. Doc. 28 at 31.

## STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "material" if it might affect the case's outcome. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The movant may discharge its burden by pointing out the absence of evidence supporting an essential element of the nonmovant's case. *Id.* at 325. The district court must draw all interferences and review the evidence in the light most favorable to the nonmovant. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant carries its initial burden, the nonmovant must come forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a rational trier of fact could not find for the nonmovant, there is no genuine dispute for trial. *Id.* But all reasonable doubts are resolved in the nonmovant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

**DISCUSSION**

**I.** Although Vann asserts four claims, each turns on the interpretation of two terms of the mortgage agreement. First, the complaint cites a federal statute, the CARES Act, and federal regulations, but Vann explains that, instead of asserting violations of those authorities as such, she is asserting violations of provisions of the mortgage. Doc. 28 at 13-16. In particular, the mortgage provides that, "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law," Doc. 21-3 at ¶16, and that if default is not cured, the lender "may invoke the power of sale and any remedies permitted by Applicable Law," *id.* at ¶22. According to Vann, these provisions incorporated the federal statutes and regulations by reference. Doc. 28 at 15, 19-20.

Second, Vann takes issue with Shellpoint foreclosing on the property after she filed her lawsuit challenging the foreclosure. *Id.* at 21; Doc. 12 at ¶¶79-80. The mortgage states that Shellpoint must notify her of the "right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Doc. 21-3 at ¶22. Vann argues that this provision creates an implied duty to pause foreclosure after suit is filed. Doc. 28 at 20-21.

Because both arguments fail, Defendants' motion is due to be granted.

4

**A. Applicable Law**

In her complaint, Vann suggests Shellpoint violated the CARES Act and federal regulations. In response to the complaint, Shellpoint identified the absence of a private right to enforce the CARES Act, Doc. 24-1 at 11-12, which prompted Vann to clarify her claims. Vann is not, she explained, asserting standalone claims under federal law. Doc. 28 at 15. She is instead asserting a violation of the mortgage agreement which, in her view, incorporates federal law into the agreement. *Id.* at 13, 15. Those provisions are paragraphs 16 and 22, *id.* at 5, 15, 19-20, which are found in many similar agreements. Those provisions provide as follows.

> **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Insturment or the Note which can be given effect without the conflicting provision.

Doc. 21-3 at ¶16.

Paragraph 22 similarly provides that in the event of an uncured default, the lender "may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law." *Id.* at ¶22. Applicable Law is defined to

mean "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *Id.* at 3.

Vann argues that the references to Applicable Law incorporate federal law into the agreement such that a violation of federal law is a violation of the agreement itself. Doc. 28 at 15. The provisions at issue are commonplace, and so are arguments like Vann's. She is mistaken.

"[I]t is clear" that the "Applicable Law" term in "paragraph 16 identifies the law that governs the parties' agreement but does not provide that violation of any such law is a breach of contract." *Page v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 272, 275 (5th Cir. 2015). When "Paragraph 16" provides that "[a]ll rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law," it "does not impose any additional or independent contractual rights or duties." *Pewitt v. Peak Foreclosure Servs. of Wash., Inc.*, No. 2:15-cv-173, 2015 WL 6738850, at *8 (E.D. Wash. Nov. 4, 2015). The language in "paragraph 16" "does not imply that if a party to the contract violates a state or federal law, it also breaches the contract." *Uzodinma v. JPMorgan Chase Bank, N.A.*, No. 3:13-cv-5010, 2014 WL 4055367, at *3-4 (N.D. Tex. Aug. 14, 2014); *see also Jennings v. RoundPoint Mortg. Servicing Corp.*, No. 2:17-cv-427, 2018 WL 1065107, at *3-4 (E.D. Va. Feb. 27, 2018). "It is merely a choice-of-law provision."

6

*Pewitt*, 2015 WL 6738850, at *8. The Applicable Law provisions in paragraphs 16 and 22, therefore, do not incorporate federal law into the agreement, and Vann cannot use them as hooks to assert federal violations as breaches of contract or "contract-based defenses." Doc. 28 at 15.

## B. Implied Duty to Pause Foreclosure

Under Paragraph 22 of the mortgage, Shellpoint was required to notify Vann of "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Doc. 21-3 at ¶22. Shellpoint sent Vann a letter, dated July 25, 2024, explaining that it would hold a foreclosure auction on August 29, 2024. Doc. 21-21 at 2; *but see* Doc. 28 at 3 (plaintiff arguing insufficient evidence to conclude letter sent on that date). On the morning of the foreclosure sale, Vann filed this case and sought a declaratory judgment that Shellpoint did not have the right to foreclose. Doc. 1-1 at ¶¶15-17. Though she filed the case shortly before the sale, Vann did not seek a temporary restraining order or a preliminary injunction. Shellpoint moved forward with the foreclosure and sold the property. Doc. 24-1 at 10; Doc. 28 at 12. There is no dispute that Shellpoint provided notice of the right to sue, but Vann argues that Shellpoint violated Paragraph 22 and the duty of good faith by continuing foreclosure after she filed her lawsuit. By doing so, she argues, Shellpoint rendered "Paragraph 22's protections illusory." Doc. 28 at 24. She is wrong.

The duty of good faith is an obligation to avoid doing "anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Laborde v. Citizens Bank, N.A.*, No. SC-2025-0014, 2025 WL 3684583, at *4 (Ala. Dec. 19, 2025). This duty is implied in all contracts, but it is narrow. *See id.* Unless a party interferes with a "specific term[] of the contract," the absence of good faith is not actionable. *Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Ala. Power Co.*, 601 So. 2d 942, 945 (Ala. 1992).

Pressing foreclosure after initiation of foreclosure litigation does not "destroy[] or injur[e] the rights" protected by Paragraph 22. *Laborde*, 2025 WL 3684583, at *4. Paragraph 22 refers to a preexisting right to sue, but its operative provision creates an entitlement to notice of that right. *See* Doc. 21-3 at ¶22; *see also Rosser v. Fed. Nat'l Mortg. Ass'n*, 345 So. 3d 647, 656 (Ala. Civ. App. 2020) (enforcing notice requirement). Prompt notice of the right to sue is important because the timing and method of challenging foreclosure can limit the available arguments and remedies. *See Ex parte Turner*, 254 So. 3d 207, 212 n.2 (Ala. 2017); *Littlefield v. Smith*, 393 So. 3d 460, 465 (Ala. 2023). "[S]trict compliance" with the notice provision is required. *Rosser*, 345 So. 3d at 65.

There is no suggestion that Vann did not receive adequate notice. Instead of claiming interference with notice, Vann argues that Shellpoint interfered with her ability to sue. Doc. 28 at 20-25. But frustration of the right to sue, divorced from

8

interference with notice, cannot establish a breach of the duty of good faith. That is because the duty of good faith protects rights and obligations created by the contractual term that the plaintiff seeks to enforce, but Paragraph 22 does not create the right to sue. *See Laborde*, 2025 WL 3684583, at \*4 (duty of good faith protects "fruits of the contract" and is not actionable unless "tied to the performance of a specific term of the contract"); *Sadler v. Players Recreation Grp., LLC*, 374 So. 3d 683, 689 (Ala. 2022) ("Simply put, that implied covenant mandates that the parties perform in good faith the obligations imposed by their agreement."). To be sure, Paragraph 22 does protect the right to sue, but it does so indirectly and through a particular means rather than at all costs. Inferring from that choice that the lender must protect the right to sue by any means necessary is not to ensure both parties "receive the fruits of the contract," *Laborde*, 2025 WL 3684583, at 4, but to create "new or different" obligations, *Hilley v. Allstate Ins. Co.*, 562 So. 2d 184, 190 (Ala. 1990). The duty of good faith does not require it.

Vann's argument fails for another reason. The duty of good faith protects "reasonable expectations of parties" and prevents one party from gaining "more for himself than the other party reasonably contemplated giving him." *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 738 (Ala. 1987). The problem that Paragraph 22 tries to solve—rights that might not be protected fully if litigation is delayed—is not unique to foreclosure. It is routine for a plaintiff to face rights

9

violations, even of constitutional rights, that cannot be remedied if the defendant moves faster than the courts. There are well-established solutions for cases in which a plaintiff can miss the opportunity for judicial review if the defendant moves too quickly, but Vann's proposed remedy is not one of them.

A plaintiff faced with a risk of imminent harm that cannot be remedied later can seek a temporary restraining order stopping foreclosure for a short period and/or a preliminary injunction preventing foreclosure until the parties finish litigating. *See* FED. R. CIV. P. 65; ALA. R. CIV. P. 65. Vann could have sought those remedies here, but she chose not to. *See Campbell v. Bank of Am., N.A.*, 141 So. 3d 492, 494 (Ala. Civ. App. 2012) (noting availability of "an action seeking declaratory and injunctive relief to halt the foreclosure sale before it occurs"); TILLEY'S ALABAMA EQUITY § 3:3 (6th ed.) ("Equity may enjoin foreclosure of a mortgage in some instances"). Had Vann obtained a preliminary injunction, she would receive exactly what she wanted: a pause of the foreclosure while the parties litigate its legality. A preliminary injunction, of course, is not handed out as a matter of right. The plaintiff must show, among other things, a likelihood of success on the merits. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *White v. John*, 164 So. 3d 1106, 1116-17 (Ala. 2014). So litigation will not pause foreclosure in every case, but instead of interfering with the mortgage, this ensures that it is being respected. That is because not every lawsuit will succeed, and in a case like this one, if the debtor cannot show that

foreclosure is likely unlawful, the lender is likely to have a right to foreclose. That is the type of remedy parties would reasonably expect a plaintiff like Vann to pursue.

The duty of good faith does not silently upend this well-established scheme. What Vann seeks is an implied contractual right to an automatic preliminary injunction. "[S]everal hundred years of history" teach that a plaintiff must do much more to receive such relief. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024). And although Paragraph 22 is "standard in Freddie Mac/Fannie Mae uniform instruments and expressly required in default notices," Doc. 28 at 21, Vann does not identify a single case adopting her reading. *But see Wright v. Marjem Recovery, LLC*, 13-cv-12058, 2014 WL 4274528, at *4 (D. Mass. Aug. 27, 2014) (duty of good faith "does not require a mortgagee to refrain from foreclosure while a suit may be pending"). With the agreement entered against this well-established tradition of rejecting remedies like Vann's, the Court cannot find that the parties reasonably expected the agreement to flip the default rule simply by referring to a right to sue. *See Sadler*, 374 So. 3d at 689-90.

Even if pressing foreclosure after a lawsuit is filed could so frustrate a plaintiff's right to sue as to be an actionable violation of the duty of good faith, it is hard to see how that would be the case here. Despite all her warnings that allowing foreclosure to proceed during litigation will nullify the right to sue, Vann never identifies how Shellpoint's conduct undermined her lawsuit—this lawsuit. She

11

claims that Shellpoint "chilled" her rights, "effectively silence[d] [her] defenses," and "render[ed] Paragraph 22's protections illusory," Doc. 28 at 24-25, but Vann raises defenses to foreclosure in this case, and though the defenses fail, the failure is not attributable to the timing of the foreclosure sale. Shellpoint did not violate the duty of good faith.

**II.** With the threshold legal issues resolved, the Court addresses each of Vann's claims.

Count 1 of Vann's complaint is titled "Declaratory Relief." *See* Doc. 12 at ¶¶81-83. Without citing any law in this count, Vann contends that Shellpoint lacked the right to foreclose, to demand claimed sums, and to conduct the foreclosure sale. *Id.* This is improper pleading. Under the Federal Rules of Civil Procedure, each count must assert a single claim that if proven would entitle the plaintiff to relief. *See* FED. R. CIV. P. 8; *Black v. Centurion Cap. Corp.*, No. 1:06-cv-0597, 2007 WL 81828, at *1 (N.D. Ga. Jan. 4, 2007). Vann cannot assert "declaratory judgment as a claim" because a "declaratory judgment is a form of relief, not a cause of action." *Datum Software, Inc. v. Citizant, Inc.*, No. 23-12538, 2024 WL 3719111, at *2 n.3 (11th Cir. Aug. 8, 2024) (citing *McKinnon v. Talladega Cnty.*, 745 F.2d 1360, 1362 (11th Cir. 1984)); *see Griffin v. Lee Cnty. Bd. of Educ.*, No. 3:16-cv-27, 2019 WL 1338896, at *6 (M.D. Ala. Mar. 25, 2019) (declaratory judgment cannot be "pleaded as [an] independent count[]").

The basis for her declaratory judgment claim, as described in her summary judgment briefing, is nonetheless that Shellpoint violated Paragraph 22 and the Applicable Law portions of the mortgage agreement. Doc. 28 at 14-25. She misreads each provision, as explained above, and thus her declaratory judgment count is baseless.

Her remaining claims also rely on those misreadings of the agreement. In Count II, Vann asserts a slander of title claim. Doc. 12 at ¶¶84-90. To succeed on this claim Vann must demonstrate that she owned the property, that the defendants published to a third party a false statement disparaging her title, that the defendants acted with malice, and that she suffered special damages. *See Bebee Props., LLC v. Ard*, 241 So. 3d 719, 727 (Ala. Civ. App. 2017). She argues that the defendants disparaged her title by recording the foreclosure deed, since there was no right to foreclosure. Doc. 12 at ¶¶86-88; Doc. 28 at 25-28. In making this claim, however, she again relies on her Applicable Law and Paragraph 22 arguments. *See* Doc. 12 at ¶86 (arguing foreclosure sale should have been stopped because she "filed a suit prior to the sale asserting defenses"); Doc. 28 at 26 ("The Foreclosure Deed falsely implied valid acceleration and clear title despite invoked defenses under Paragraph 22.").

In Count III, she raises a claim under the Fair Debt Collection Practices Act. Doc. 12 at ¶¶91-104. The FDCPA prevents debt collectors from "[t]aking or

threatening to take any nonjudicial action to effect dispossession" without a "present right to possession of the property." 15 U.S.C. § 1692f(6). Vann claims that Shellpoint had no "present right to foreclose" and thus violated the FDCPA because she filed her lawsuit before foreclosure and because it did not comply with the applicable law provision of Paragraph 22. Doc. 12 at ¶102; *see* Doc. 28 at 28-29.

In Count IV, Vann asserts breach of contract and argues that Shellpoint breached the mortgage agreement by proceeding with the foreclosure after she filed suit and by not complying with "applicable law." Doc. 12 at ¶¶105-25. Doc. 28 at 29-31.

In sum, each of Vann's claims rely on her interpretations of Paragraph 22 and the Applicable Law provisions. Because those interpretations are incorrect, the claims must fail. Vann abandons her remaining claim, unjust enrichment. Doc. 12 at ¶¶125-28; Doc. 28 at 3. Defendants are thus entitled to summary judgment.

## CONCLUSION

The Motion for Summary Judgment (Doc. 24-1) is **GRANTED** as to all counts.

**DONE** and **ORDERED** this 30th day of July, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE

14